1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | WALTER J. ROSALES, ESTATE OF      CASE NO. 07cv0624
HELEN CUERO, ESTATE OF DEAL

12 | ROSALES, KAREN TOGGERY, ESTATE      **ORDER GRANTING MOTION TO**
OF MARIE TOGGERY, ESTATE OF           **DISMISS THE FIRST AMENDED**

13 | MATTHEW TINEJERO TOGGERY, AND    **COMPLAINT UNDER 12(b)(1)**
JAMUL INDIAN VILLAGE                 **WITH PREJUDICE**

14 |                              Plaintiffs,      [Doc. No. 19]

15 |      vs.

16

17 | UNITED STATES OF AMERICA,
DEPARTMENT OF THE INTERIOR, DIRK

18 | KEMPTHORNE, BUREAU OF INDIAN
AFFAIRS, CARL ARTMAN, ASSISTANT

19 | SECRETARY OF INDIAN AFFAIRS, IN
HIS OFFICIAL CAPACITY, NATIVE

20 | AMERICAN GRAVES PROTECTION AND
REPATRIATION COMMITTEE, SHERRY

21 | HUTT, NATIONAL NAGPRA PROGRAM
MANAGER, IN HER OFFICIAL

22 | CAPACITY, AND TIM MCKEOWN,
NATIONAL NAGPRA PROGRAM

23 | DESIGNATED FEDERAL OFFICER AND
REGULATIONS COORDINATOR, IN HIS

24 | OFFICIAL CAPACITY

                           Defendants.

25

26

        Presently before the Court is defendants' motion to dismiss plaintiffs' first amended complaint

27

with prejudice. (Doc. No. 19.) For the foregoing reasons, the Court grants defendants' motion.

28

//

BACKGROUND

Factual Background

Plaintiffs Walter Rosales and Karen Toggery are individual Native Americans suing to enforce the Native American Graves Protection and Repatriation Act ("NAGPRA"). (First Amended Complaint ("FAC"), Doc. No. 2, ¶¶ 1 & 2.) Rosales and Toggery also represent the estates of four individuals. (Id. ¶¶ 3 & 4.) While the complaint names the Jamul Indian Village, a federally-recognized Indian tribe, as a plaintiff, the Tribe filed an *amicus* brief asserting plaintiffs do not have the authority to bring this action on its behalf. (Id. ¶ 2; Amicus Brief, Doc. No. 15.) For clarity and consistency with the decisions of other federal courts regarding these parties, the *amicus* Jamul Indian Village will be referred to as the Tribe.[1] All other plaintiffs will be referred to as "plaintiffs."

Defendants are the United States, the Bureau of Indian Affairs of the Department of the Interior, Carl Artman, the Assistant Secretary of Indian Affairs, in his official capacity, the Native American Graves Protection and Repatriation Review Committee, the National NAGPRA Program, Sherry Hutt, the National NAGPRA Program Manager, in her official capacity, and Tim McKeown, the National NAGPRA Program's Designated Federal Officer and Regulations Coordinator, in his official capacity (hereinafter "defendants").

Plaintiffs' Previous Cases

This case arises from a dispute over the leadership of the Tribe which has involved federal, state and tribal courts for more than ten years. In 1994, plaintiffs attempted a recall election of tribal leadership. Rosales v. United States, 477 F. Supp. 2d 119, 122-23 (D.D.C. 2007). Since that time, two factions–one represented by plaintiffs and the other constituting the *amicus* Tribe–have asserted control over the government of the Tribe. Id. at 123. Plaintiffs contend the Bureau of Indian Affairs ("BIA") improperly recognized the opposing faction's leadership. (FAC ¶ 65.) Plaintiffs appealed the BIA's decision to the District Court for the District of Columbia in Rosales v. United States, No. 03-cv-117. The Honorable Gladys Kessler granted summary judgment

---

[1]The District Court for the District of Columbia has twice held plaintiffs lack authority to bring suit on behalf of the Tribe. Rosales v. United States, 477 F. Supp. 2d 119, 122 n.1 (D.D.C. 2007); Rosales v. United States, 477 F. Supp. 2d 213, 214 n.1 (D.D.C. 2007).

against plaintiffs in that action on March 8, 2007.  The court found plaintiffs are not authorized to represent the Tribe.  Rosales, 477 F. Supp. 2d at 122, n.1.  The court further held the BIA did not act improperly in upholding the opposing faction's elections against plaintiffs' challenges.  Id. at 126-30.  Plaintiffs have appealed that ruling. (Amicus Brief at 9.)

Plaintiffs were previously before this Court over a dispute with the Tribe in Rosales v. United States, No. 01-cv-591.  In that case, plaintiffs sought a "a declaration of their entitlement" to a parcel of land then called 597-080-01 but now referred to as Parcel 04.  (FAC Ex. D; Defendants' Memorandum in support of Motion, Ex. K at 1.)  The Court granted summary judgment in favor of defendants on February 14, 2002, holding Parcel 04 was conveyed to the United States in trust for the Tribe, not for the individual plaintiffs.  (Memo. ISO Motion, Ex. F at 13.)

Plaintiffs appealed and the Ninth Circuit Court of Appeals affirmed on the basis that the Jamul Indian Village was a necessary and indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure.  Rosales v. United States, 73 F. App'x. 913, 914 (9th Cir. 2003).

Plaintiffs have also filed cases in other forums related to their challenges to the Tribe's leadership.[2]

The Instant Case

Plaintiffs bring this action against the federal government for violations of NAGPRA.[3]  Plaintiffs request the Court stop construction activities on three pieces of land known as Parcels 04, 05, and 06.  Plaintiffs allege they know human remains and associated items are located on

---

[2]In a case before the U.S. Court of Claims, Plaintiffs seek full faith and credit for a decision issued by plaintiff Toggery acting as their faction's court, "the one and only Jamul Indian Village tribal court" (FAC Ex. M & ¶ 59).  That case, Rosales v. United States, No. 98-860 L, has been stayed pending judgment in the action before Judge Kessler.  (Id.)  Plaintiffs have appealed Judge Kessler's grant of summary judgment.  Plaintiffs also seek full faith and credit for their faction's tribal court decision in San Diego Superior Court in Jamul Indian Village v. Hunter, Nos. 698798 & 723872.  (FAC ¶ 59 & Ex. M.)  On October 21, 2007, the Superior Court of California, County of San Diego ordered the cases "stayed/dismissed until the (3) Interior Board of Indian Affairs pending appeals are resolved." (Id. Ex. M.)

[3]NAGPRA, codified at 25 U.S.C. § 3001 et seq., lays out obligations and procedures for federal agencies when Native American human remains or associated funerary objects are discovered, and responsibilities for federal agencies and museums which controlled such remains or objects before the statute's enactment.  Historically, the statute "represents the culmination of decades of struggle by Native American tribal governments and people to protect against grave desecration, to effect the repatriation of thousands of dead relatives or ancestors, and to retrieve stolen or improperly acquired cultural property."  San Carlos Apache Tribe v. United States, 272 F. Supp. 2d 860, 886-87 (D. Ariz. 2003) (internal citations and quotation marks omitted).

those parcels.  (FAC ¶¶ 7, 62-64.)  Plaintiffs allege "grading, excavation, demolition, operation of heavy equipment, moving dirt and/or gravel, and other construction activities" are presently occurring on the land, "thereby mutilating, disinterring, removing, excavating, and otherwise disturbing the Native Americans [sic] human remains" and associated items.  (Id. ¶ 68.)  Plaintiffs and defendants agree Parcel 05 is tribal land for the purposes of NAGPRA and title to Parcel 06 is held by the Catholic Diocese.

Plaintiffs allege Parcel 04 is federal land, not tribal land, under NAGPRA.  In 1978, the land was granted "to the United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate."  (FAC Ex. D.)  Plaintiffs dispute this Court's previous interpretation of the 1978 deed and argue the land is held in trust for individual Indians, and thus "federal," rather than "tribal," land under NAGPRA.  Because the grant was made prior to the Tribe's organization, plaintiffs allege the Tribe has never asserted jurisdiction over Parcel 04, and the parcel is not under the jurisdiction of a tribal court.

Plaintiffs claim the United States violated NAGPRA and its fiduciary duty of trust by failing to cease all construction activity upon inadvertantly discovering human remains; failing to provide notice to lineal descendants of the presence of remains; failing to provide a written plan of action; and failing to repatriate the remains to plaintiffs.  (FAC ¶¶ 76 & 83.)  Plaintiffs also allege violations of California Health and Safety Code Sections 7050.5 and 7052 (relating to removal of human remains) and California Public Resources Code Sections 5097-99 (relating to permitting on archaeological sites).  (FAC ¶¶ 85 & 91.)

Procedural Background

Plaintiffs originally filed their complaint in this case on January 19, 2007, in the United States District Court for the District of Columbia.  (Doc. No. 1, Part 1, p. 8.)  However, on March 19, 2007, the Honorable Rosemary M. Collyer granted defendants' motion to transfer the case to the Southern District of California.  Rosales v. United States, 477 F. Supp. 2d 213 (D.D.C. 2007).

On April 10, 2007, plaintiffs filed a first amended complaint.  (Doc. No. 2.)  On June 11, 2007, defendants filed a motion to dismiss the first amended complaint in its entirety.  (Doc. No. 19.)  The Tribe filed an amicus brief in support of the motion on June 11, 2007.  (Doc. No. 15.)

Plaintiffs filed their opposition to the motion on July 20, 2007.  (Doc. No. 32.)  Defendants filed

their reply on August 9, 2007.  (Doc. No. 38.)  The Tribe filed a response in support of the motion

on August 9, 2007.  (Doc. No. 39.)  The Court heard oral argument on the motion on October 29,

2007, with Patrick D. Webb appearing for plaintiffs, Samantha Klein and Barbara Coen appearing

for defendants, and Skip Durocher appearing on behalf of the *amicus* Tribe.

DISCUSSION

Defendants move to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure for lack of subject matter jurisdiction, and, in the alternative, under Rule 12(b)(6) for

failure to state a claim.

Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter

jurisdiction of the court, as the federal courts are courts of limited subject matter jurisdiction.  See,

e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003).  Consequently,

it is presumed that jurisdiction lies outside this court and the plaintiff bears the burden of

establishing the propriety of the court's jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am.,

511 U.S. 375, 377 (1994).

A motion to dismiss under Rule 12(b)(1) can be either "factual" or "facial."  Thornhill Pub.

Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); 2 Moore's Federal Practice §

12.30 (2004).  If, as here, the defendant brings a facial attack, arguing the allegations in the

complaint are insufficient to demonstrate the existence of jurisdiction, the Court's inquiry is much

the same as when ruling on a motion brought under Rule 12(b)(6).  Moore's Federal Practice §

12.30.  Specifically, the Court must assume the factual allegations in the complaint are true and

construe them in the light most favorable to the plaintiff.  Miranda v. Reno, 238 F.3d 1156, 1157

n.1 (9th Cir. 2000); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  A Rule 12(b)(1)

motion will be granted if the complaint, when considered in its entirety, on its face fails to allege

facts sufficient to establish subject matter jurisdiction.  Thornhill Pub'g Co., 594 F.2d at 733.

No court has subject matter jurisdiction over a suit against the United States unless it

waives its sovereign immunity.  "[T]he United States, as sovereign, is immune from suit save as it

1    consents to be sued . . . and the terms of its consent to be sued in any court define that court's

2    jurisdiction to entertain the suit."  Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (citations and

3    internal quotation marks omitted).  NAGPRA creates a private right of action but no waiver of

4    sovereign immunity.  25 U.S.C. § 3013; San Carlos Apache Tribe v. United States, 272 F. Supp.

5    2d 860, 886 (D. Ariz. 2003) ("The APA waives the sovereign immunity of the Government for

6    NAGPRA claims.").  However, the Administrative Procedures Act ("APA") waives the United

7    States' sovereign immunity for challenges to agency action or to compel action "unlawfully

8    withheld." 5 U.S.C. § 702; Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004).

9    Under the Federal Tort Claims Act (FTCA), the United States waives sovereign immunity for tort

10   claims providing the claimant "first presents the claim to the appropriate Federal agency and his

11   claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675.  The FTCA is

12   the exclusive remedy for torts committed by federal officers in the scope of their employment.

13   United States v. Smith, 499 U.S. 160, 166 (1992) (citing 28 U.S.C. § 2679(b)(1)).

14   I.      Plaintiffs' NAGPRA claims

15          Defendants argue plaintiffs' federal claims are barred by sovereign immunity.  Defendants

16   allege there has been no final agency action for purposes of the APA because the disputed property

17   is not federal land under NAGPRA, such that defendants had no duty to act.  As a result,

18   Defendants argue the Court lacks subject matter jurisdiction.  Before the Court can address the

19   question of whether the federal agencies had a duty to act under NAGPRA, the Court must

20   determine whether plaintiffs can, in the absence of the Tribe, dispute ownership of the property for

21   purposes of NAGPRA.

22          A.      Are plaintiffs precluded by the previous Ninth Circuit decision from proceeding in

23                  the absence of the Tribe?

24          Defendants first argue the decision of the Ninth Circuit in plaintiffs' previous case

25   precludes plaintiffs from proceeding in the absence of the Tribe.  In the previous case, the Ninth

26   Circuit affirmed this Court's grant of summary judgment in favor of defendants, holding that the

27   Tribe was a necessary and indispensable party to plaintiffs' action asserting beneficial ownership

28   of Parcel 04.  Rosales v. United States, 73 F. App'x 913, 914 (9th Cir. 2003).  The Ninth Circuit

1    also held the Tribe could not be joined because of its sovereign immunity.  Id.  Defendants argue

2    this decision prevents plaintiffs from now claiming the land is "federal" on the basis of plaintiff's

3    beneficial ownership of the land without joining the Tribe.

4    "The doctrine of collateral estoppel (or issue preclusion) prevents relitigation of issues

5    actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior

6    proceeding."  Kourtis v. Cameron, 419 F.3d 989, 994 (9th Cir. 2005) (citation and internal

7    quotation marks omitted).  It is applied "where (1) the issue necessarily decided at the previous

8    proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended

9    with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted

10   was a party or in privity with a party at the first proceeding."  Id. (citation omitted); see also Af-

11   Cap, Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080, 1086 (9th Cir. 2007).

12   "The party asserting preclusion bears the burden of showing with clarity and certainty what

13   was determined by the prior judgment."  Hydranautics v. FilmTec Corp., 204 F.3d 880 (9th Cir.

14   2000) (citation omitted); see also Pardo v. Olson & Sons, Inc., 40 F.3d 1063, 1066 (9th Cir. 1994).

15   Issue preclusion is not appropriate in this case.  In a brief memorandum disposition, the

16   Ninth Circuit found the Tribe necessary and indispensable to plaintiffs' action for ownership.

17   Plaintiffs' present action, while contingent on a similar claim of beneficial ownership, does not

18   seek property rights.  Defendants have not met their burden of showing with certainty that the

19   issue of the Tribe's necessity and indispensability is identical in both cases.  Furthermore, the

20   parties had not briefed whether the Tribe was a necessary and indispensable party in that case or

21   the appeal before the Ninth Circuit.  The parties thus did not have "a full and fair opportunity for

22   litigation" on that question.  Cf. Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, 18

23   Federal Practice and Procedure § 4423 (2002 Ed.) ("As with many other limitations on issue

24   preclusion, concern with the opportunity to litigate in the first case is easily justified when it is

25   mingled with uncertainty as to identity of the issues or actual litigation.")  Thus, the Ninth Circuit

26   decision does not preclude plaintiffs in this case from litigating whether the Tribe is a necessary

27   and indispensable party.

28   //

1    B.    Is the Tribe a necessary and indispensable party?

2        Although issue preclusion does not apply, plaintiffs nevertheless cannot litigate whether

3    Parcel 04 is federal or tribal land in the absence of the Tribe, a necessary and indispensable party.

4    Because the Tribe enjoys sovereign immunity and cannot be joined,[4] the Court lacks subject matter

5    jurisdiction.

6        Under Rule 19 of the Federal Rules of Civil Procedure, the court performs two inquiries.

7    First, it determines whether an absent party is "necessary" to the litigation.  Fed. R. Civ. P. 19(a).

8    If the party is necessary but cannot be joined, the court considers whether the party is

9    "indispensable," requiring the case's dismissal.  Fed. R. Civ. P. 19(b).

10        Rule 19 suggests four factors to consider in determining indispensability:

11            first, to what extend a judgment rendered in the person's absence might be

12            prejudicial to the person or to those already parties; second, the extent to which, by

13            protective provisions in the judgment, by the shaping of relief, or other measures,

14            the prejudice can be lessened or avoided; third, whether a judgment rendered in the

15            person's absence will be adequate; fourth, whether the plaintiff will have an

16            adequate remedy if the action is dismissed for nonjoinder.

17    Id.

18        It is clear the Tribe "claims an interest" in the subject matter of this litigation such that

19    adjudication in its absence "may . . . as a practical matter impair or impede the person's ability to

20    protect that interest."  Fed. R. Civ. P. 19(a).  Plaintiffs argue the faction which claims an interest in

21    the land does not actually represent the Tribe, because plaintiffs claim tribal leadership.  This

22    argument has been repeatedly rejected by the BIA and the District Court for the District of

23    Columbia.  Rosales v. United States, 477 F. Supp. 2d 119, 122 n.1 (D.D.C. 2007).[5]  Plaintiffs'

24    dispute lies with the current tribal leadership and its decisions.  In the instant case, they seek to

25

26        [4]The Ninth Circuit previously found the Tribe enjoys sovereign immunity.  Rosales v. United States, 73 F. App'x

27    913, 914 (9th Cir. 2003).

28        [5]Plaintiffs also ignore the Jamul Tribal Court's assertion of jurisdiction in evicting plaintiffs from Parcel 04.
    (Memo. ISO Motion, Exs. G & H.)  The Ninth Circuit also found the Tribe claims jurisdiction over Parcel 04 in its
    decision.  Rosales v. United States, 73 F. App'x 913 (9th Cir. 2003).

07cv0624

compel the federal government to stop the Tribe's construction.

This attempt to preclude certain actions by the Tribe necessarily implicates the Tribe's sovereign immunity.  Plaintiffs may not make an "end run" around tribal sovereign immunity by suing the United States.  See Lewis v. Norton, 424 F.3d 959, 963 (9th Cir. 2005) ("The plaintiffs of course did not sue the tribe directly, but filed this action against the federal agencies responsible for the regulation of tribal affairs, including gaming.  They did so because they recognized that tribal immunity would create, at the very least, a serious obstacle.  For the very reasons we have already outlined that compel tribal immunity with respect to the plaintiffs' claims, their efforts to do an end run around tribal immunity must also fail.") (citations omitted).  Thus, the Tribe is a necessary party to the litigation.

The Tribe is also an indispensable party.  Plaintiffs ask this Court to issue a mandatory injunction ordering the United States to stop the Tribe's construction.  This relief directly implicates the Tribe's activities and cannot be fashioned to protect the absent Tribe's interests.  Plaintiffs argue the presence of the United States as a defendant serves as an adequate protector of the Tribe's interest.  "Impairment may be minimized if the absent party is adequately represented in the suit."  Shermoen v. U.S., 982 F.2d 1312, 1318 (9th Cir. 1992) (internal citations omitted).  The United States is sometimes able to adequately represent an Indian tribe in cases which affect the tribe's interests.  E.g., Washington v. Daley, 173 F.3d 1158 (9th Cir. 1999) (finding U.S. had same interests as tribe); Sw. Ctr. for Biological Diversity v. Babbitt, 150 F.3d 1152, 1154 (9th Cir. 1998) ("The United States can adequately represent an Indian tribe unless there exists a conflict of interest between the United States and the tribe.").

In cases involving intertribal conflicts, on the other hand, the Ninth Circuit has held the United States is not an adequate representative of an absent tribe.  E.g., Pit River Home & Agr. Coop. Ass'n v. United States, 30 F.3d 1088, 1101 (9th Cir. 1994) ("[T]he United States cannot adequately represent the interests of the Council.  This case involves intertribal conflicts that could subject the United States to inconsistent duties or obligations."); Confederate Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1500 (9th Cir. 1991) ("[P]otential intertribal conflicts means the United States cannot properly represent any of the tribes.").  The Ninth Circuit, on

1  appeal from this Court's ruling in plaintiffs' previous case, held "[t]he United States is not an

2  adequate representative of the Village's interests in this action because the United States cannot

3  adequately represent the interests of one tribe in an intertribal dispute." Rosales, 73 F. App'x at

4  914; citing Pit River Home, 30 F.3d at 1101 (finding United States was not an adequate

5  representative in "intertribal" dispute where claims by group of Indian families, not a tribe,

6  implicated interests of a tribe).[6] Thus plaintiffs may not litigate the status of Parcel 04 in the

7  absence of the Tribe.

8       C.      Is Parcel 04 tribal land under NAGPRA?

9       Even assuming the Court could address plaintiffs' claims in the absence of the Tribe, the

10  Court does not have subject matter jurisdiction because Parcel 04 is tribal land under NAGPRA.

11  The statute defines "tribal land" as "(A) all lands within the exterior boundaries of any Indian

12  reservation; (B) all dependent Indian communities; (C) any lands administered for the benefit of

13  Native Hawaiians. . ." 25 U.S.C. § 3001(15).  NAGPRA does not define the term "reservation."

14  However, "federal lands" are "any land other than tribal lands which are controlled or owned by

15  the United States," and lands held in trust by the federal government for an Indian tribe are

16  "tribal," rather than "federal." 25 U.S.C. § 3001(5) (emphasis added).

17       Defendants argue the term "reservation" does not have a single meaning in federal law, but

18  under NAGPRA the term encompasses Parcels 04 and 05.  They argue the Tribe controls the

19  activity on the land and has a property interest in the land.  Defendants direct the Court's attention

20  to the assertion of jurisdiction over Parcel 04 by the Intertribal Court of Southern California,

21  appointed to act as the Jamul Tribal Court by the Tribe.  (Memo. ISO Motion Exs. G & H.)

22  Defendants also argue "tribal land" has a broad definition because it includes "dependent Indian

23  communities," which is land not formally reserved.  Defendants rely on decisions defining

24  "reservation" under the Indian Reorganization Act and the Indian Country Statute to support the

25  conclusion "reservation" includes Parcels 04 and 05.  The Handbook of Federal Indian Law

26  
27       [6]Plaintiffs cite a case from the Tenth Circuit Court of Appeals in which the tribe was not an indispensable party to an action challenging the United States' acquisition of land in trust for the tribe.  Sac & Fox Nation of Mo. v. Norton, 240 F.3d 1250 (10th Cir. 2001) (finding United States an adequate representative).  Plaintiffs' reliance on this case is

28  misplaced.  Under controlling Ninth Circuit precedent, the United States cannot be an adequate representative in an intertribal dispute.  See, e.g., Pit River Home, 30 F.3d at 1101.

broadly defines "reservation" as "land set aside for federal protection for the residence or use of tribal Indians, regardless of origin."  Felix Cohen, Handbook of Federal Indian Law 189 (2005 Ed.) (citations omitted).  Defendants argue a broad definition of "reservation" and thus "tribal land" helps effectuate the purposes of the statute and furthers tribal self governance.

Plaintiffs concede Parcel 05 is tribal land (Opp. at 4 & 5), but they argue Parcel 04 is federal land because it was deeded in trust to the federal government for "such Jamul Indians of one-half degree or more blood as the Secretary of the Interior may designate."  They construe this language as creating an individual right to the land, rather than creating a trust for the Tribe.  The Court previously rejected that construction of the 1978 deed in its February 14, 2002 order granting summary judgment:

> [P]laintiffs cannot claim rights in [Parcel 04] separately from those of the Jamul Tribe.  First, considering the language of the 1978 deed, it is clear that [Parcel 04] was not conveyed in trust to the United States solely for the benefit of the individual plaintiffs but rather for the Jamul Tribe as a whole.

(Memo. ISO Motion, Ex. F at 13, emphasis added.)  On April 22, 2002, the Court denied plaintiffs' motion for reconsideration, again concluding:

> the language of the 1978 deed conveying [Parcel 04] into trust for "such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate" refers to the Jamul Tribe rather than the individual Jamul Indians then residing on the parcel.

(Memo. ISO Motion, Ex. K at 8, emphasis added.)  Furthermore, this Court also decided the land constituted part of a reservation:  "the government contends [Parcel 04] was part of the 'reservation' prior to 1981 . . . . This argument forms an alternative basis for the court's finding." (Id. at 8 n.2.)  This decision was affirmed by the Ninth Circuit, although on other grounds.

Precedent undermines plaintiffs' formalistic argument that a "reservation" cannot be established by a trust deed benefitting a tribe in the process of organizing.  Minnesota v. Hitchcock, 185 U.S. 373, 390 (1902) ("Now in order to create a reservation, it is not necessary that there should be a formal cession or a formal act setting apart a particular tract.  It is enough that

- 11 -

1    from what has been done there results a certain defined tract appropriated to certain purposes.");

2    United States v. Azure, 801 F.2d 336, 338 (8th Cir. 1986) ("It is well established that the actions of

3    the federal government in its treatment of Indian land can create a *de facto* reservation, even

4    though the reservation was not created by a specific treaty, statute, or executive order."); see also

5    Indian Child Welfare Act, 25 U.S.C. § 1903(10) (defining reservation as land "held by the United

6    States in trust for the benefit of any Indian tribe or individual").

7         Plaintiffs also argue the Court must assume the truth of their allegations regarding Parcel

8    04 on a motion to dismiss.  (Opp. at 18-22, 32-35.)  But the Court is not required to credit

9    conclusory legal allegations cast in the form of factual allegations, "unwarranted deductions of

10   fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.

11   2001); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Applying the statute to the

12   1978 deed, the Court again finds the land is held in trust for the Tribe, part of the reservation, and

13   thus "tribal land."[7]

14        D.    Do defendants have any duties under NAGPRA on the disputed lands?

15        Finally, defendants argue that because both Parcels 04 and 05 are tribal land, federal

16   agency duties under NAGPRA have not been triggered.  The Court agrees that plaintiffs allege

17   duties owed by federal agencies which are not found in the statute.  Plaintiffs claim a duty to

18   repatriate objects found on tribal land pursuant to 25 U.S.C. § 3005.  But the statutory duty of

19   repatriation applies to "Native American human remains and objects possessed or controlled by

20   Federal agencies and museums."  Id. § 3005(a) (emphasis added).  "If, pursuant to section 3003 of

21   this title, the cultural affiliation of Native American human remains and associated funerary

22   objects with a particular Indian tribe . . . is established, then the Federal agency or museum . . .

23

24        [7]Plaintiffs' allegations of defendants' fraud in the previous case are frivolous.  Plaintiffs allege the federal
     defendants failed to disclose certain written admissions contained in Solicitors' memoranda, published cases, and books,
25   in violation of Rule 26. (FAC ¶¶ 10, 11, 24-45 & 52.) The allegedly withheld memoranda are available publicly. Plaintiffs
     contend defendants fraudulently failed to disclose the case of Coast Indian Community v. United States, 550 F.2d 639 (Ct.
26   Cl. 1977), to the Court.  (FAC ¶¶ 24, 26, 35 & 36.)  The Court considered that case in denying plaintiffs' motion for
     reconsideration.  (Memo. ISO Motion, Ex. K at 8 n.3.)  The Handbook of Federal Indian Law was also cited by the Court
27   in its order (id. at 8 n.2), negating plaintiff's contentions its information was fraudulently withheld (FAC ¶¶ 29, 40, 44 &
     45).  Plaintiffs' "fraud on the court" argument appears to be their vehicle to again challenge this Court's 2002 findings
28   regarding the title of Parcel 04, which the Court thoroughly considered in both its grant of summary judgment and its denial
     of reconsideration.

shall expeditiously return such remains and associated funerary objects." Id. Section 3003 specifically delineates responsibilities for "[e]ach Federal agency and each museum which has possession or control over holdings or collections of Native American human remains and associated funerary objects." Id. § 3003 (emphasis added). Plaintiffs have not alleged any federal agency has "possession or control" of any items on any of the parcels. Instead, they argue ownership of the land by the United States in trust creates the obligation. This contradicts the plain words of the statute excluding tribal lands from the definition of federal lands. Id. §§ 3001, 3003 & 3005.

Plaintiffs also allege a violation of 25 U.S.C. § 3002, which covers inadvertent discoveries on both federal and tribal lands. But under Section 3002, the person who makes an inadvertent discovery must notify "the responsible Federal agency official with respect to Federal lands" or "the responsible Indian tribal official" on tribal land. Id. § 3002(d)(1); 43 C.F.R. § 10.4(b). Upon notification, the federal official has three days to perform specific responsibilities, including securing and protecting the discovered items and notifying any affiliated tribes. 43 C.F.R. § 10.4(d). While the federal official "must" take these steps, the responsible Indian tribal official "may" take similar steps. Compare id. § 10.4(d) with id. § 10.4(e).[8] The only responsibility of a federal agency triggered by an inadvertent discovery on tribal land relates to permits, and plaintiffs do not allege a violation of this duty.[9] Id. § 10.4(g) ("All Federal authorizations to carry out land use activities on Federal lands or tribal lands, including all leases and permits, must include a requirement for the holder of the authorization to notify the appropriate Federal or tribal official immediately upon the discovery of human remains, funerary objects, sacred objects, or objects of

---

[8]As defendants also note, the statute's division between tribal control on tribal land and federal duties on federal land promotes the Tribe's independence and sovereignty. The administrative history indicates the Department of the Interior decided to place responsibility for compliance on tribal lands on tribes, rather than federal agencies:

Section 3 (a)(2)(A) of the Act makes it clear that Indian tribes have preference regarding custody of human remains, funerary objects, sacred objects, or objects of cultural patrimony excavated intentionally or discovered inadvertently on their tribal lands second only to lineal descendants. The regulatory text is consistent with Federal recognition of an Indian tribe's sovereignty regarding administration of their lands and has not been changed.

NAGPRA Regulations, 60 Fed. Reg. 62134-01 at 62142 (Dec. 4, 1995) (emphasis added).

[9]If the United States were to issue such a permit, it would need to include a condition that the Tribe be notified upon the discovery of human remains or associated objects. Its duties regarding inadvertent discoveries on tribal land would thus be satisfied. 43 C.F.R. § 10.4(g).

07cv0624

cultural patrimony pursuant to § 10.4 (b) of these regulations.").  Plaintiffs' claimed violations of other portions of the statute's regulations similarly fail because no federal agency is alleged to have possession or control of human remains or objects.[10]

Plaintiffs rely on several cases to support their position that the federal government has duties on tribal lands under NAGPRA.  (Opp. at 5-7, citing Yankton Sioux v. U.S. Army Corps of Engineers, 83 F. Supp. 2d 1047 (D.S.D. 2000) (hereinafter Yankton Sioux I), Yankton Sioux v. U.S. Army Corps of Engineers, 209 F. Supp. 2d 1008 (D.S.D. 2002) (hereinafter Yankton Sioux II), Yankton Sioux v. U.S. Army Corps of Engineers, 258 F. Supp. 2d 1027 (D.S.D. 2003) (hereinafter Yankton Sioux III), and San Carlos Apache Tribe v. United States, 272 F. Supp. 2d 860 (D. Ariz. 2003).)

However, none of these cases concerns tribal land.  In Yankton Sioux I, "[t]he Corps concede[d] . . . that the cemetery is located on federal land."  83 F. Supp. 2d at 1057 n.12.  In Yankton Sioux II and Yankton Sioux III, the federal government transferred the land at issue to the state with the "explicit[] [provision] that NAGPRA continues to apply. . . . The State of South Dakota and the Corps entered a written agreement recognizing that 'the Federal Government will have the ultimate responsibility for ensuring that historical and cultural resources in an on these lands are protected.'"  Yankton Sioux II, 209 F. Supp. 2d at 1018 (emphasis added).  In San Carlos Apache, the federal government operated an irrigation project on land it purchased from the tribe.  272 F. Supp. 2d at 866-68.  Because none of these cases concerns tribal land, plaintiffs' reliance on them is misplaced.

Plaintiffs argue the United States has made an "inadvertent discovery" on the land because plaintiffs have warned the United States that they believe remains and associated objects will be found there.  The regulations define an inadvertent discovery as the "unanticipated encounter or detection of human remains, funerary objects, sacred objects, or objects of cultural patrimony found under or on the surface of Federal or tribal lands pursuant to section 3 (d) of the Act."  43

---

[10]In addition to the regulations discussed in the text, plaintiffs allege violations of 43 C.F.R. §§ 10.2(f), 10.2(g)(4), 10.5, 10.6 and 10.10.  None of these sections have been triggered.  Sections 10.2(f) and 10.2(g) are definitional sections and create no duties.  Section 10.5 applies only to federal lands.  Section 10.6(a) establishes a priority of custody, where custody is "possession or control."  Section 10.6(c) applies only to federal lands.  Section 10.10's repatriation duties are not triggered unless the federal agency is in "possession or control" of the objects.

07cv0624

1   C.F.R. § 10.2(g)(4).  All courts to consider this issue have held an inadvertent discovery does not

2   occur when an agency is placed on notice of likely or certain discovery, but that discovery must be

3   "actual."  E.g., Yankton Sioux II, 209 F. Supp. 2d at 1018-19 (holding government's excavation is

4   not intentional when it "should have foreseen" presence of remains); San Carlos Apache, 272 F.

5   Supp. 2d at 893 ("For evidentiary support of the NAGPRA claim, they refer the Court to

6   references of their own self-serving expressions of concern that the process of draining the Lake

7   and low water levels will result in uncovering human remains and/or other objects.  Only when

8   and if this occurs and is reported to the BIA will NAGPRA duties and obligations be triggered.")

9   (emphasis added).  Plaintiffs do not allege conduct by the United States within NAGPRA's

10  definition of "inadvertent discovery."

11       While plaintiffs allege that all claims in the first amended complaint apply to parcels 04,

12  05, and 06, title for Parcel 06 is allegedly held by the Catholic Diocese.  NAGPRA includes no

13  duties for federal officials on private land.  At oral argument, plaintiffs argued Parcel 06 is

14  "public" land.  The Diocese's land is neither federal nor tribal, the only land categories covered by

15  NAGPRA.[11]

16       Because plaintiffs fail to allege a duty to act under NAGPRA, they also fail to identify

17  discrete agency inaction in violation of a nondiscretionary duty, which they must for the United

18  States to waive its sovereign immunity under the Administrative Procedures Act.  Accordingly, the

19  Court lacks subject matter jurisdiction over plaintiffs' NAGPRA claims.

20  II.     California state law claims

21       Defendants allege the United States has not waived its sovereign immunity with respect to

22  plaintiffs' claims under California state law.[12]  Plaintiffs respond that the Federal Tort Claims Act

23  ("FTCA") waives the sovereign immunity of the United States for state tort law claims.  But

24  FTCA claims must meet the jurisdictional prerequisite of presentation to, and final adjudication

25  by, a federal agency.  28 U.S.C. § 2675(a).  Plaintiffs rely on an October 2, 2006 letter as their

26

27       [11]Plaintiffs also argued the Diocese must comply with applicable state laws.  As discussed next, plaintiffs' state law claims against the United States are foreclosed by its sovereign immunity.

28       [12]These claims are for violations of California Health and Safety Code Sections 7050.5 and 7052 (relating to removal of human remains) and California Public Resources Code Sections 5097-99 (relating to permitting on archaeological sites).  (FAC ¶¶ 85 & 91.)

07cv0624

"presentation."  (Opp. at 21.)[13]  Because this letter does not include a "sum certain" amount of recovery sought, the FTCA waiver does not apply.  See, e.g., Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776 (9th Cir. 1984) ("[S]ection 2675(a) requires the claimant or his legal representative to file . . . (2) a sum certain damages claim.").  Therefore, the United States is immune from suit for plaintiffs' state law claims.

Because defendants have prevailed on the foregoing arguments, the Court does not reach defendants' arguments regarding specific defendants or the Quiet Title Act.

**Dismissal Without Leave to Amend**

A court may dismiss a complaint without granting leave to amend if it appears with certainty that the plaintiff cannot state a claim and any amendment would be futile.  See Fed. R. Civ. P. 15(a) (stating leave to amend "shall be freely given when justice so requires"); DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("[L]eave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

In this case, plaintiffs cannot assert a claim that the land is federal without joining the Tribe.  Moreover, the United States has no duty to act with regard to Parcels 04 and 05, tribal land, and Parcel 06, private land.  Accordingly, any amendment is futile.

//
//
//
//
//
//
//
//
//

---

[13] The letter is addressed to the "Alleged Chairman" of the Tribe, with copies apparently sent to the BIA and other government officials and agencies.  (Defendants' Reply, Ex. O.)

07cv0624

1

**CONCLUSION**

2          The Court **GRANTS WITH PREJUDICE** defendants' motion to dismiss the first

3  amended complaint under 12(b)(1) for lack of subject matter jurisdiction and **DENIES** as moot

4  defendants' motion to dismiss the first amended complaint under 12(b)(6) for failure to state a

5  claim.

6

7  **IT IS SO ORDERED.**

8

9  **DATED:  November 28, 2007**

10                                                    _Irma E. Gonzalez_

11                                                    **IRMA E. GONZALEZ, Chief Judge**
                                                     **United States District Court**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv0624